## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,                Criminal No. 19-20168

                    Plaintiff,                Honorable Paul D. Borman

vs.

CONSTANTINE XETHALIS,

                    Defendant.

_____/

## RESPONSE AND OPPOSITION TO
## DEFENDANT'S MOTION FOR EARLY RELEASE

## INTRODUCTION

Constantine Xethalis is serving a 40-month sentence for transporting ten pounds of methamphetamine into the United States from Canada at the Blue Water Bridge.   His criminal history in Canada spans three decades, and involves multiple events of drug trafficking, possession with intent to distribute, and simple drug possession.   Xethalis is a 51 year old, type 1 diabetic who filed a *pro se* motion for immediate release from prison based on COVID-19.   Xethalis is housed at a federal medical center where his diabetes is under constant medical supervision.   His medical condition does not provide extraordinary and compelling reasons for his immediate release.   In addition, he is a danger to the community and the §3553(a)

1

factors counsel in favor of his continued incarceration.   His motion should be denied.

## **BACKGROUND**

Xethalis is a Canadian citizen with no ties to the United States who resided in Montreal prior to his arrest.   As this Court aptly noted at sentencing, Xethalis amassed "a few decades' worth" of prior convictions.   Sent. Tr. at 7.   This case stems from CBP's seizure of approximately ten pounds of methamphetamine pills from Xethalis at the Blue Water Bridge, as Xethalis attempted to enter the United States on March 13, 2019.

On March 28, 2019, the grand jury indicted Xethalis for possession with intent to distribute a controlled substance.   Given the drug quantity and type, Xethalis faced a 10-year mandatory minimum sentence unless he qualified for the safety valve.   Xethalis pled guilty on May 15, 2019.   In October 2019, this Court determined that Xethalis qualified for the safety valve and sentenced him to 40 months in custody.   He did not appeal.

Xethalis is now 51 years old and incarcerated at Federal Medical Center (FMC) Devens.   He is a type 1 diabetic.   His expected release date is in about a year and a half, in January 2022.   Although he is subject to a 5-year term of

supervised release, in reality, there will be no supervision because he will be returned to Canada when he leaves federal custody.

Xethalis mailed the instant motion to the Court; there is no postmark on the envelope.  [PgID 82]   His motion was received by this Court on July 23, 2020. [PgID 76]   The United States was ordered to respond on or before August 14, 2020.

## ARGUMENT

## XETHALIS HAS NOT MET THE NARROW REQUIREMENTS FOR COMPASSIONATE RELEASE.

Xethalis' motion for a reduction in sentence to time served should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow, requiring all of the following: (1) exhaustion of administrative remedies; (2) an extraordinary and compelling reason for release; and (3) evaluation of the section 3553(a) factors that favor detention.

3

**A.      Application of Exhaustion of Remedies in Xethalis' Case.**

Compassionate release requires administrative exhaustion. If a defendant moves for compassionate release under 18 U.S.C. §3582(c)(1)(A), the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the Bureau of Prisons or waiting 30 days from when the warden at his facility received his request. 18 U.S.C. § 3582(c)(1)(A).  This requirement is mandatory.  *See United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

Xethalis attaches a June 4, 2020 memorandum from the acting warden to the FMC Devens inmate population as evidence that he has exhausted his administrative remedies.  [PgID 78]  This memorandum in no way supports Xethalis' position. However, Xethalis submitted an Inmate Request for Compassionate Release Consideration form in May 2020.  *See* Ex. A.  It was returned to him because the form was incomplete.  BOP records show that a second request was received on July 15, 2020.  *See id*.  The warden ultimately denied Xethalis' request on July 29, 2020.  *See* Ex. C.

Under these circumstances, the United States does not contest that Xethalis has satisfied Section 3582(c)(1)(A)'s exhaustion requirement.  But, as discussed below, his motion fails the last two policy directives of section 3582.

4

**B.      Xethalis Has Not Provided Extraordinary and Compelling Reasons for this Court to Grant his Compassionate Release.**

"While the First Step Act amended who can qualify for compassionate release under § 3582(c)(1)(A), it did not amend the requirements for release under United States Sentencing Guideline 1B1.13 as to the four categories of 'extraordinary and compelling reasons' that, at least one of which, an individual must satisfy to come under that Guideline, cmt, app. n1." *United States v. Buttrom*, No. 16-CR-20645, 2020 WL 4016074, at \*2 (E.D. Mich. July 16, 2020).   Those categories are: "suffering from a serious medical condition;" age of "at least 65 years old and experiencing a serious deterioration in physical health;"   "family circumstances;" and "other reasons as determined by the director of the BOP."   *Id*.   Significantly, "[t]he COVID-19 pandemic, by itself, does not qualify as the type of inmate-specific medical condition authorizing compassionate release."   *Buttrom*, 2020 WL 4016074, at \*2.   The BOP has worked diligently to implement precautionary measures reducing the risk from COVID-19 to inmates.   *See Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020) (agreeing with the BOP that "it has responded reasonably to the risk posed by COVID-19"); *United States v. Schamante*, No. 13-CR-20764, 2020 WL 4366066, at \*4 (E.D. Mich. Jul. 30, 2020) (Borman, J.) ("The BOP has in fact put in place and updated its protocols to address the novel risks from COVID-19;" *citing* Wilson).   And "the mere existence of COVID-19 in

5

society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Xethalis is a type 1 diabetic. Type 1 diabetics are **NOT** on the CDC list of people who are at increased risk of severe illness from COVID-19. Rather, type 1 diabetics "might" be at increased risk. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Even so, Xethalis argues that given his existing medical condition, the enhanced risk posed by COVID-19 constitutes an "extraordinary and compelling reason" to release him. Last month, the same argument was considered, and rejected, by the United States District Court for the Southern District of New York, in the case of *United States v. Cabrera*, No. 05 CR. 1278-2 (NRB), 2020 WL 4226637, at *1 (S.D.N.Y. Jul. 23, 2020). Cabrera is also an inmate at FMC Devens. He has a considerably riskier medical profile than Xethalis, with CDC COVID-19 risk factors of stage 4 chronic kidney disease, type 2 diabetes and obesity. *Id.* In denying Cabrera's motion for compassionate release, the court recognized the significance of a housing assignment at a medical facility instead of a regular prison. Because the defendant was "currently incarcerated in FMC Devens, which is not a regular prison but a

6

medical facility," the medical risks the defendant faced "are significantly mitigated by his designation to a medical facility." *Id.* The same holds true for Xethalis. As the warden noted in denying Xethalis' request: "You reside in an open housing unit, are completely independent with your activities of daily living, and FMC Devens is able to manage your medical needs at this time." Ex. C. Under these circumstances, Xethalis "has failed to establish a sufficient basis to doubt FMC Devens' capability to address the risks posed by COVID-19 to defendant." *Cabrera*, 2020 WL 4226637, at *1.

FMC Devens is effectively managing COVID-19 within its facility. In *Grinis v. Spaulding*, No. 20 Civ. 10738, 2020 WL 2300313 (D. Mass. May 8, 2020), FMC Devens inmates brought a class action seeking an order to release sufficient number of inmates to ensure effective social distancing. 2020 WL 2300313, at *1. The court denied plaintiffs' motion for preliminary injunction, noting extensive measures taken at FMC Devens to address the risks posed by COVID-19. *Id.* at *3. The case was eventually dismissed. Likewise, in *United States v. Farmer*, No. 1:16CR203, 2020 WL 4057550, at *3 (N.D. Ohio Jul. 20, 2020), another court considering compassionate release for another FMC Devens inmate observed that the information available in mid-July 2020 "indicates that FMC Devens has 7 active, positive cases among its 919 inmates. The BOP reports a total

of 2 inmate deaths and no staff deaths at FMC Devens from COVID-19.   As such, it does not appear that the conditions at FMC Devens present a substantial risk to its inmate population."   The inmate in *Farmer* suffered from hypertension, diabetes and end-stage renal disease requiring dialysis.   To be sure, the numbers at FMC Devens have only improved in the past few weeks since the *Farmer* decision was issued.   As of August 13, 2020, there are zero active, positive cases, and still no additional inmate fatalities.   Nearly 900 inmates have been tested – including Xethalis.   *See* Ex. B at 1-3.

Xethalis' complaint about FMC Devens is that it is inconsistent with his insulin hours, has no stringent diet requirements and lacks proper menu items to satisfy his medical needs.   [PgID 77]   Xethalis has obtained copies of over 350 pages of medical records from the BOP.   *See* Ex. D.   But Xethalis has elected to support his motion for a reduction in sentence to time served with only 3 of these pages.   [PgID 79-81]

Xethalis points to an insulin reaction that he had over a year ago at a different facility in support of his motion for early release from FMC Devens today.   [PgID 79]   This event took place in June 2019 when he was housed at Milan (which is not a medical facility), after he had pleaded guilty but prior to sentencing.   Records reflect that he did not eat his breakfast, which is critical to the management of his

diabetes.  *Id*.   He also was unable to locate the glucometer that the BOP had provided to him.   *Id*.

But Xethalis has been housed at FMC Devens since mid-March 2020.   His medical encounters over the past five months show that the medical staff at FMC Devens has been working closely with Xethalis to manage his medical needs.   As the warden recognized in denying Xethalis' request, Xethalis resides in an open housing unit and is completely independent with his activities of daily living.   *See* Ex. C.

By May 2020, Xethalis had received 356 pages of his medical records from the BOP:  191 from FCI Milan and 165 from FMC Devens.   *See* Ex. D.   The United States has obtained additional records from May 2020 through August 13, 2020.   All of Xethalis' medical records (now exceeding 400 pages) are available to the Court upon request.   But those most relevant to the pending issues are included at Exhibit B (with page numbers, added in the lower right-hand corner, to assist the Court).

First and foremost, Xethalis tested negative for COVID-19 just this week. *See* Ex. B at 3.   He was also negative at a prior test, that was given in May, even though he was asymptomatic.   *See id*. at 1-2.

On July 22, 2020, Xethalis "was seen and evaluated on his housing unit for follow up to review his diabetes." *Id*. at 6. This appointment appears to have occurred because Xethalis was not following medical advice concerning his insulin and was only in "partial compliance." *Id*. at 9. At the July 22 evaluation, Xethalis reported "intermittent hyperglycemia," and that "he does his best to avoid high sugar/carbohydrate foods, and exercises by walking or running almost every day." *Id*. at 6. He denied "fever, chills, headache, dizziness, difficulty breathing, chest pain, abdominal pain, nausea, vomiting, diarrhea, constipation," and was in no pain. *Id*. He was described as "alert and oriented x3, ambulatory without difficulty, resting comfortably in the chair during interview, skin warm/dry/intact, breathing normal/unlabored, talking in full sentences, no apparent distress at this time." *Id*. They reviewed "diet, exercise and insulin regimen." *Id*. at 8. His medications were adjusted and he was prescribed his preferred type of long-acting insulin, Lantus, in the evenings, "as this worked better for patient prior to incarceration." *Id*. And a follow-up appointment was set for August 20 to see how the new regimen was working. *Id*. Xethalis was directed to "Return Immediately if Condition Worsens." *Id*. But these medical records obtained through August 13 do not indicate that that Xethalis ever returned. One can thus infer that Xethalis' condition has not worsened since July 22.

On May 4, 2020, Xethalis was seen by a registered dietician "for nutrition consult regarding Type 1 Diabetes." *Id*. at 10.   Xethalis admitted that "he has been exercising in the evening to try and lower blood sugars, 'I walk fast for a few hours.'"   *Id*.   Xethalis was "receiving two snacks a day, sandwich in the am and pm," which "help prevent hypoglycemic events."   They "discussed prioritizing protein and vegetable choices and monitoring carbohydrate intake,"   as well as "commissary items that may be beneficial for blood sugar management and importance of keeping fast-acting sugar (i.e glucose tablets, juice etc) on hand in case of hypoglycemia."   *Id*. The plan was to continue with his snacks, provide him with a "carb counting menu and additional blood glucose logs," and to "continue to monitor and adjust nutrition plan as appropriate."   *Id*. at 11.   Xethalis was encouraged "to follow consistent carbohydrate intake, carry fast-acting sugar, eat snack if meal-time insulin is spaced apart from mainline meal," and "continue with frequent blood glucose monitoring."   *Id*.   He was supplied a self-carry glucometer upon his arrival at the facility, as well as glucose tablets.   *See id*. at 16 & 20.

Xethalis saw Dr. Ruze on May 1, 2020 because the doctor "asked to see him to follow up on his sugar control."   *Id*. at 13.   Xethalis attached one of the two pages of the records from this appointment in support of his motion.   [PgID 81] The doctor noted that Xethalis "generally feels well and is generally doing fine."

11

They discussed changes to his snack schedule to help manage his blood sugar.   Ex. B at 13.   The doctor continued -- through July -- a prior Diet Order of "Snack - 2 x day, Special Instructions - please give meat and cheese sandwich with fruit at breakfast and lunch. Substitute in PBJ intermittently." *Id*. at 14.   (This snack has since been extended again, through October 3.   *Id*. at 4.)   The doctor also noted that he "will make adjustments to accommodate for restrictions on unit due to COVID 19 precautions."   *Id*.

Xethalis previously saw Dr. Ruze on March 19, 2020, shortly after his arrival at FMC Devens, which is around the same that that the coronavirus outbreak began to hit hard in the United States.   He attaches one page from the 5-page report. [PgID 80]   To control the spread of the coronavirus within the facility, significant precautions were put in place that impacted inmates' diet, exercise, timing of insulin lines and access to the commissary.   But Xethalis' doctor took extra steps to address these limitations.   He spoke with dietary and they decided that a snack order would be appropriate.   *See* id. at 18-19.   The doctor further noted: "I am ordering snack bags for his two times daily X 14 days as he has frequent lows and feels he is not getting enough food."   The snack was the same sandwich and fruit referenced above.   *Id*. at 18.   The doctor also adjusted Xethalis' medications and insulin dosages, noting:   "I will also back off on the AM fixed dose as this seems to bring

him down around noon time."   He also prescribed glucose tabs to be used if Xethalis' blood sugar levels crashed.   *See* id. at 16.

This was five months ago, and the facility is no longer sheltering in place. Xethalis is back to his exercise regime.   *See* Ex. B at 6 (July 22:   "exercises by walking or running almost every day").   As discussed above, he met productively with the FMC Devens dietician to discuss good food choices, including selection from both mainline dining and the commissary.   *See id*. at 10-11.   His FMC Devens medical team has been proactive, setting regular appointments to follow-up. And of course, should an emergency arise, he has immediate access to care.   He has not needed it.

The medical professionals at FMC Devens appear committed to working productively with Xethalis to assist him in managing his condition.   And the environmental conditions at FMC Devens are far from dire, with zero inmates currently testing positive for COVID-19.   Nor does Xethalis explain how his medical care will be better, and not worse, under Canada's publicly funded healthcare system, which is widely-known for wait times of several weeks just to see a doctor.   Xethalis has not established an extraordinary and compelling medical reason for him to be released from prison and returned to Canada, where he will have no supervision of any kind from the Probation Department.

Moreover, Xethalis is nevertheless ineligible for a reduction in sentence to time served because he is a danger to the community. Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." The compassionate release of violent offenders, including most drug dealers, is prohibited. *See United States v. Stone*, 608 F.3d 939, 947–48 & n.6 (6th Cir. 2010). Under §3142, drug offenders are presumed to pose a continuing danger to the community. *United States v. Manso-Portes*, 838 F.2d 889, 890 (7th Cir. 1987), citing *United States v. Strong*, 775 F.2d 504, 506-08 (3d Cir. 1985).

In suggesting that he is not a danger, Xethalis virtually ignores the conduct that resulted in his current incarceration other than to label it a "drug offense and non-violent." This greatly minimizes the severity of his conviction. Xethalis was involved in the distribution of 10 pounds of methamphetamine. This drug is highly dangerous. The Sentencing Commission and Congress take it seriously, in recognition its dangers and its incredible, brutal, addictive properties. He holds an extensive criminal history from Montreal, including robbery, drug possession and trafficking. PSR at ¶¶29-39. His 8 prior custodial sentences apparently did not provide the necessary inspiration to keep Xethalis from returning to crime. His type 1 diabetes did not stop him either. He offers no suggestion as to how he will support

himself upon release.   He is a drug user and gambler.   CBP officers also found an MDMA (ecstasy) pill and approximately 2.7 grams of cocaine in Xethalis' personal belongings, and he admitted they were his.   *See id.* at ¶12.   He agreed to participate in the instant offense to settle a gambling debt.

In conclusion, Xethalis is ineligible for compassionate release because he has not established any extraordinary and compelling reasons for a reduction in sentence to time served, and he remains a danger to the community.

**C.     The §3553(a) Factors Strongly Weigh Against Xethalis' Release.**

Even when an inmate is statutorily eligible for a sentence modification based on "extraordinary and compelling reasons," compassionate release is not automatic. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C.§3553(a) and determine that release is still appropriate. 18 U.S.C. §3582(c)(1)(A); USSG §1B1.13. Here, as at sentencing, those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. §3553(a).

This Court discussed the relevant §3553(a) factors during the sentencing hearing, and determined that they supported a 40-month custodial sentence:

15

> [T]he nature and circumstances of the offense are serious. The history and characteristics of the defendant, while they may not score under the sentencing guidelines here, they do indicate and defendant's counsel as well concedes that he has been involved in criminal activity for a period of time.
>
> There's a need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment and afford adequate deterrence to criminal conduct. And given the recent conviction based on conduct that occurred in the year of 2019, which we're still in, that there may as well -- there is a need to protect the public from further crimes of the defendant.

Sent. Tr. at 20-21.   In response to concerns about Xethalis' health, the Court explained that it would recommend designation at a federal medical center prison, but also made clear that "I have considered home confinement and I do not feel that it is appropriate in this serious case."   *Id.* at 21.   These factors apply with equal force today, a mere 10 months later.    The specific factors are addressed more fully below.

## "[T]he nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Xethalis brazenly ignored the laws of both the United States and Canada that prohibit drug trafficking when he served as a cross-country drug courier.   He also possessed ecstasy and cocaine for his personal use.

While this case marks Xethalis' first conviction in the United States, his criminal history in Canada is extremely concerning.   He has convictions for robbery

and use of a firearm in 1991, drug trafficking in 1995 and again in 1999, and drug possession in 2002.   *See* PSR at ¶30-34.   The First Step Act makes his 1995 and 1999 Canadian drug trafficking convictions ineligible predicates for §851 enhancements.   And because they are foreign convictions, not even his more recent custodial convictions count for guideline scoring purposes.   *See* USSG §4A.1.2(h).

Xethalis' family lives in Montreal, and he intends to return there following disposition of the offense.   *See id*. at ¶¶44-49.   In his first request to the warden for a reduction in sentence, he stated that if released, "I have a home with a wife."   Ex. A.   This appears to be untrue, given that Xethalis was unmarried at the time of his sentencing last October, and has been in custody since his arrest.   *See id*. at ¶47. Xethalis' lack of candor and willingness to provide false information is of concern.

**"[T]he need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).**

This is a "serious case" (Sent. Tr. at 21) involving the trafficking of 10 pounds of a frequently abused drug, methamphetamine.   The ready and willing distribution of highly addictive drugs like methamphetamine guarantees that the ultimate users, who undoubtedly suffer from addiction, will have little chance to overcome their challenges.

Xethalis is a recidivist who does not respect the law. His extensive experience with the criminal justice system has clearly made no impact on his desire to refrain from continued criminal conduct. In his sentencing memorandum and his allocution, he attempted to divert blame to others, demonstrating a lack of acceptance of responsibility: "The drugs didn't belong to me. They belonged to my co-defendant at the time. It was his. It wasn't mine." Sent. Tr. at 13.

Just punishment is an important factor. Even Xethalis' attorney admitted that "punishment is in order." Sent. Tr. at 11. In a case like this, involving the transportation of a large quantity of meth into the United States at a border crossing, it is important to send a message that such conduct will not be tolerated, and that the penalties for committing such crimes are severe.

This Court rejected defendant's proposal for home confinement out of hand at the time of sentencing. Sent. Tr. at 21. Compassionate release is even less restrictive. Xethalis has served less than half of his sentence. The Court can consider the length of time served in weighing the §3553(a) factors. *See United States v. Kincaid*, 805 F. App'x 394, 395-96 (6th Cir. 2020); *Buttrom*, 2020 WL 4016074, at *2. Xethalis' term of incarceration has not been long enough to provide sufficient just punishment.

**"[T]he need for the sentence imposed . . . to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B) and (C).**

Deterrence and protection of the public remain important sentencing factors in this case.   Xethalis has been committing crimes for nearly 30 years, and served eight separate custodial sentences in Canada.   *See* PSR at ¶¶29-34; 38-39.   None of these prior terms of incarceration gave him sufficient perspective to refrain from the instant criminal activity.    Previous fines, probation, jail and prison terms for his offenses did not successfully deter Xethalis from criminal conduct. He has repeatedly demonstrated that a period of incarceration is the only way to protect the public from his crimes.

It is additionally troubling that if Xethalis' motion is granted, unlike most other defendants, he will not be subject to supervision by the Probation Department because he will be living in a foreign country.   The Court acknowledged as much at sentencing.   Sent. Tr. at 22.   No Probation officer will be keeping an eye on Xethalis to ensure his compliance with the terms of supervised release set forth in his judgment when he returns to Canada.    Past conduct is one of the best indicators of future performance.   This defendant, as the Court noted, has 30 years of criminal history. He has been incarcerated eight times.   This conviction marks the third time that he has been involved in a drug trafficking offense.   He has had

19

diabetes for many years.   But having diabetes has never stopped him from committing crimes before.   Even his defense attorney recognized that "Mr. Xethalis doesn't always think right," "He doesn't always do the right thing," and "He does foolish things."   Sent. Tr. at 8, 10.   He has not given this Court any reason to believe that he will life a law-abiding life if given the privilege of early release.

*     *     *

Even if the Court were to find Xethalis eligible for compassionate release, the §3553(a) factors should still disqualify him.   But Xethalis has another option to return to Canada.   A foreign national prisoner may request to transfer to his home country to serve a sentence imposed in the United States.   Xethalis can apply for a prisoner transfer through the Department of Justice's International Prisoner Transfer Program.   Undersigned counsel would not oppose such a transfer in Xethalis' case.

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that defendant's motion be denied.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*/s Erin S. Shaw*
ERIN S. SHAW

20

Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI   48226
(313) 226-9182

Dated: August 14, 2020

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 14, 2020, I caused the **RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION FOR EARLY RELEASE** to be served on CONSTANTINE XETHALIS by placing a true and correct copy of same in the United States mail, postage prepaid, to the following address:

Constantine Xethalis
#57365-039
FMC DEVENS
FEDERAL MEDICAL CENTER
P.O. BOX 879
AYER, MA  01432

*/s Erin S. Shaw*
Erin S. Shaw
Assistant U. S. Attorney
